(December 26, 1895.)

# HASKINS v. CURRAN.

[43 Pac. 559.]

PLEADINGS—CONTRACT—PARTNERSHIP.—Under the contract sued on herein a partnership was formed for promoting the sale and development of the mining claims referred to in the complaint.

MINING PARTNERSHIP.—DISSOLUTION OF PARTNERSHIP.—In the case of an express promise by one partner to repay to the other his share of advances made by the latter on account of partnership business, the amount of such share becomes the debt of the promisor recoverable by an action at law, without dissolution of partnership or an accounting between the partners.

COUNTERCLAIM—TESTIMONY.—*Held,* that the answer sets up a subsequent contract to the one sued on as a defense and counterclaim, and that defendants should have been permitted to introduce all pertinent testimony tending to prove that issue.

INSTRUCTIONS.—In the trial of a case to a jury it is error for the court to instruct the jury that there is no evidence tending to prove the defense or counterclaim of defendants, when there is such evidence. *Held,* that the instructions asked by defendants should have been given.

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

C. W. Beale and W. W. Woods, for Appellants.

"A mining partnership exists when two or more persons, who own or acquire a mining claim, for the purpose of working it and extracting the mineral therefrom actually engage in working the same." (Rev. Stats., sec. 3300.) "It is not necessary that all the co-owners in a mining claim shall engage in working a mine, together or separately. The partnership exists without any agreement, either express or implied." (*Hawkins v. Spokane Hydaulic etc. Co.,* 3 Idaho, 241, 28 Pac. 433.) Nor is any express agreement to share in the profits and losses necessary for the formation or existence of a mining partnership. (Rev. Stats., sec. 3301.) It is not even essential or necessary that the property worked should have been purchased by partnership funds. (Rev. Stats., sec. 3304.) The general proposition that one partner in relation to partnership affairs

and transactions cannot sue his copartner at law is elementary; his remedy is by bill for dissolution and accounting. (*Barn-stead v. Empire Min. Co.*, 5 Cal. 300; *Ross v. Connell*, 45 Cal. 133; *Graham v. Holt.* 3 Ired. 300, 40 Am. Dec, 408; *Murray v. Bogert*, 14 Johns. 318, 7 Am. Dec. 466; *Harris v. Harris*, 39 N. H. 52; *McDonald v. Holmes*, 22 Or. 212, 29 Pac. 735.) Before settlement and accounting it is also true that one partner cannot maintain an action to compel a contribution for partnership debts paid, or advances made the firm. (*McDonald v. Holmes*, 22 Or. 212, 29 Pac. 735; *Crossley v. Taylor*, 83 Ind. 337.) The condition upon which a deed is placed in escrow may be expressed in writing or rest in parol, or be part in writing and part oral. (6 Am. & Eng. Ency. of Law, 863; *Stanton v. Miller*, 58 N. Y. 192.) Instructions must not assume material facts in controversy, and it is error for the court in his charge to assume as proven a fact which is in issue. (*Leland v. Isenbeck*, 1 Idaho, 469; *People v. Ah Fung*, 16 Cal. 137; *Caldwell v. Center*, 30 Cal. 540, 89 Am. Dec. 131; *McNeil v. Barney*, 51 Cal. 603; *Wood v. Tomlinson*, 53 Cal. 720; *Baltimore etc. R. R. Co. v. Woodruff*, 4 Md. 242, 59 Am. Dec. 72.) An erroneous instruction is not cured by a correct instruction in another part of the charge. (*Lufkins v. Collins*, 2 Idaho, 150, 7 Pac. 135; *People v. Wong Ah Ngow*, 54 Cal. 151, 35 Am. Rep. 69; *People v. Valencia*, 43 Cal. 552; *Hickman v. Griffin*, 6 Mo. 37, 34 Am. Dec. 124.)

W. B. Heyburn and E. M. Heyburn, for Respondent.

The defense below was conducted upon two theories contended for by defendants. The first was that this was a mining partnership, and was subject to the rules governing such a partnership created under the statutes of Idaho, and that one partner could not sue another directly, but must proceed for an accounting. The second position contended for by defendants below was that the contract sued upon has been canceled by the substitution of another contract. There are two sufficient objections to the positions assumed by counsel, both on the trial and in this court, that the plaintiff and defendants were mining partners as provided for in section 3300 of the Revised Statutes of Idaho. The first objection is that these

parties did not own the mining claims upon which they were working, and the second is, that they were working them under a specific contract or agreement which was in lieu of any statutory provisions. Before the expiration of the Curran bond on these properties, and after Haskins and Curran had become mutually interested in making a sale of them, Haskins succeeded in bringing Mr. Boyle from Nevada to look at these properties with a view to buying them. That upon his examining them he agreed to take a bond on them. That certain deeds were placed in escrow to Mr. Boyle to be delivered to him upon the payment of so much money. That it was simply an option to Mr. Boyle to purchase the properties should he see fit to do so, upon the payment of the price named. It has long since ceased to be contended in any court that under such a contract the party taking the bond or option can be compelled to exercise his option unless he sees fit to do so. (*Finnerty v. Fritz,* 5 Colo. 174; *Gordon v. Darnell,* 5 Colo. 302.)

The respondent, William S. Haskins, brought this action against the appellants, Martin Curran and Susie Hussey, to recover $3,649.97, with interest thereon, on account of certain advances claimed to have been made by him under the following contract, to wit:

"The undersigned, Martin Curran and Susie Hussey, being the owners of a certain mining bond held by them of the Paymaster, Clear Grit and Lost Wonder lode claims, held in the name of the said Martin Curran, and being without sufficient money to meet and perform their obligations under said bond, it is hereby agreed that the undersigned, W. S. Haskins, shall furnish such money so long as it shall be mutually agreeable to him and the said Martin Curran and Susie Hussey to carry out the terms of said bond; and, in consideration of such advancements, said Martin Curran and Susie Hussey hereby admit him as an equal one-third partner in and under said bond, and in and to all property, rights, titles and interests therein and thereunder, and obligate themselves to repay him on or before June 3, 1892, two-thirds of all moneys so advanced by him, with interest at the rate of ten per cent thereon per annum from the date of such advancements, with costs of collecting the

same, if any, including reasonable attorney's fees. Witness the signature of said parties, this ninth day of October, 1891.

> "MARTIN CURRAN.
> "SUSIE HUSSEY.
> "WM. S. HASKINS."

The defendants, by their answer, deny the allegations of the complaint, and set forth what they claim to be the facts of the transaction out of which the contract sued on arose; and further, as a counterclaim, they aver that a contract was entered into by the parties to this suit subsequent to the one sued on herein, whereby the defendants sold all of their two-thirds interest in the contract that they held for the foreclosure and working of the mines referred to in the complaint, for which interests the plaintiff agreed to pay them $2,000, and release them from any and all claims which plaintiff had against them under the contract sued on; and demanded judgment for the sum of $2,000, with interest thereon from the nineteenth day of November, 1891. The case was tried by the court, with a jury, and a verdict and judgment given and entered in favor of plaintiff for the sum of $2,309, with $230.90, as attorney's fees. A motion for a new trial was made and overruled. This appeal is from the order denying a new trial and the judgment. Reversed.

SULLIVAN, J.—Appellants assign sixty-seven errors, and demand a reversal of both the order denying a new trial and the judgment, and a dismissal of the action.

Appellants open the argument in their brief with the proposition that because the bond which appellant Curran had on the mines did not, in terms, require him to work them, the plaintiff cannot recover for money advanced for that purpose; that the contract sued on only required Haskins to advance money to carry out the obligations of Curran and Hussey with the owners of said mines, and indorsed on the deed or envelopes which contained them, and deposited in the bank; that the conditions thereon indorsed only provided for the payment of money to the owners, and contained no mention of work to be performed on the mines. It appears that this contention was first raised in this court, but I have concluded to pass upon it.

The facts appear in the record that, at the time the contract sued on was made, the appellants were working said mines, and the first advance of money made by respondent amounted to $2,750, $2,400 of which was paid. to the owners of the mines, and the balance, to wit, $350, was paid by Mr. Curran for work done on the mines.   Mr. Curran testified that he worked the Paymaster mine with Mr. Haskins until November 8, 1891, when Haskins told him to quit work, that he would not put up any more money.   We think the record clearly shows that the contract sued on contemplated that the mine should be worked, and that Haskins should put up money therefor, as long as it was agreeable for him so to do.   There is no merit in the contention.

It appears from the record that the appellants defended in the court below on two grounds, to wit: 1. That a mining partnership was formed by the terms of said contract, and that one partner could not maintain an action at law against his copartners in regard to partnership matters until, at least, a settlement and an accounting had been had between the partners, and a balance struck and agreed upon; and 2. That the contract sued on had been canceled, and superseded by a subsequent contract; while the cause was tried in that court by respondent on the theory (1) that no partnership was created under said contract, and that no partnership existed in said matter; and (2) that the subsequent contract relied upon by appellants was only an option, at best, which had been waived by plaintiff, and was no defense for that reason.

As to the first contention of appellants, to wit, that a partnership was formed by the terms of said contract: It was the evident intention of the parties thereto to form a partnership for promoting the sale of said mines, and to do certain development work thereon, each to stand one-third of the payments and expenses, and each to receive one-third of the profits of the venture.   The contract itself recognizes the parties thereto as partners, and contains the following stipulation, to wit: "In consideration of such advancements, said Martin Curran and Susie Hussey hereby admit him [Haskins] as an equal one-third partner in and under said bond, and in and to all property rights, titles, and interests therein," etc.   The attorneys

for the respondent earnestly contend that said contract contains none of the elements of a partnership, while, in their brief filed herein, they recognize the defendants as partners of the plaintiff, under and by virtue of the terms of said agreement. They say: "The venture seems to have had in it some of the elements of uncertainty incident to mining speculation; and Mr. Haskins, while evidently willing to risk losing one-third of the money which he should put into the speculation, desired to secure himself upon personal security for the two-thirds advanced for his partners. And his partners evidently had sufficient faith in the outcome of the speculation to undertake, in the event of its failure, to repay Mr. Haskins the two-thirds of the money advanced on their account." As to the law on this proposition, Mr. Justice Story, in his work on Partnership, at section 82, says: "There may also be a partnership in some cases touching interests in lands, or in a single tract of land, which will be governed by the ordinary rules applicable to partnerships in trade and commerce  Thus, for example, there may be a partnership in working of mines, for courts of equity constantly treat the working of a mine as a species of trade, and apply the same remedial justice to such cases as they do to ordinary partnerships." And we need not go beyond our own statutes to sustain the proposition that a partnership may be formed for such ventures as the one under consideration. The Revised Statutes, section 3300, declares that "a mining partnership exists when two or more persons who own or acquire a mining claim, for the purpose of working it and extracting the mineral therefrom, actually engage in working it." In the absence of an express contract of partnership, that section of the statute declares that when certain facts, therein enumerated, exist between parties, a mining partnership exists between them. Such parties or any of them do not necessarily need to own the mine so worked. It is sufficient if they acquire it for the purpose of working it, and actually engage in working the same. The provisions of said section need not be invoked in the case at bar to hold that a mining partnership existed between the parties, for the reason that the parties themselves have made an express contract of partnership for promoting the sale and development of said mines, and have actually engaged in working them.

Appellants contend that, as the parties to said contract were partners, the respondent cannot maintain this action, for the reason that one partner cannot maintain an action at law against his copartners for advances made by him on account of the firm, until, at least, a settlement and an accounting of partnership matters has been had, and a balance struck and agreed upon by the partners, and cite, in support thereof, *Ross v. Cornell,* 45 Cal. 133; *Graham v. Holt,* 3 Ired. 300, 40 Am. Dec. 408; *McDonald v. Holmes,* 22 Or. 212, 29 Pac. 735; *Crossley v. Taylor,* 83 Ind. 337; Parsons on Partnership, 268; Story on Partnership, sec. 348a, p. 558. Those authorities recognize the general rule, and some of them also recognize that there are exceptions to the general rule. As a rule, advances to the firm and advances from it do not constitute debts, strictly speaking, but are only items in the accounts between the partners in the winding up of the concern; and in that class of cases a suit for an accounting is as necessary to settle the account as in the case of any other partnership accounts. (*Wilson v. Soper,* 13 B. Mon. 411, 56 Am. Dec. 573; 2 Lindley on Partnership, bot. p. 1350, and note 2.) But I do not think the case at bar comes within that rule. The stipulation in the agreement sued on is as follows: "It is hereby agreed that the undersigned, W. S. Haskins, shall furnish such money as long as it may be mutually agreeable to him and the said Martin Curran and Susie Hussey to carry out the terms of said bond; and, in consideration of such advancements, said Martin Curran and Susie Hussey hereby admit him as an equal one-third partner in and under said bond, and in and to all property rights, titles and interests therein and thereunder, and obligate themselves to repay him on or before June 3, 1892, two-thirds of all money so advanced by him, with interest at the rate of ten per cent thereon per annum from date of such advancements, with costs of collecting the same, if any, including reasonable attorney's fees." This contract is one admitting Haskins to participate equally in a copartnership theretofore existing between Martin Curran and Sussie Hussey; and, in consideration of being admitted a one-third partner therein, he agrees to put up his one-third of the money required, and agrees to loan, or, if you please, advance, the two-thirds

required to be advanced by his copartners; and, in consideration thereof, his copartners obligate themselves to repay their 'share so advanced on or before June 3, 1892, with interest 'thereon, and also to pay all costs of collecting the same, including a reasonable attorney's fee. Here is an express promise by Curran and Hussey to repay their share of advances made by Haskins on or before June 3, 1892, including interest and costs of collecting the same. Under those circumstances, the money so advanced becomes the debt of the promisors, recoverable by direct action therefor, without dissolution of partnership or adjustment of partnership accounts. (2 Lindley on Partnership, bot. p. 1350, latter part of note 2; Parsons on Partnership, 285 et seq.)

If the defendants had given Haskins their promissory note for the sum so advanced, would it be urged that he could not maintain a suit thereon when due? I think not. Appellants make a contract in writing to repay two-thirds of all advances, which they agreed to pay at a certain date, thus clearly showing that it was not the intention that such advances should be considered as items in the partnership accounts to be adjusted with them. In *Sprout v. Crowley,* 30 Wis. 187, the court, after stating the general rule in regard to one partner maintaining a suit at law against his copartner, says: "But, where there is an express agreement by one partner to repay to the other his share of advances made by the latter on account of partnership business, the amount of such share becomes thereby the debt of the partner who has thus agreed to pay the same, which may be recovered in an action brought directly therefor, without any regard to the partnership relation existing between the parties or the state of their firm accounts"—and cites numerous authorities in support of that proposition. The doctrine there laid down is reaffirmed in *Gauger v. Pautz,* 45 Wis. 449. The rule there laid down is applicable to the case at bar.

As to the contention of appellants that the contract sued on had been canceled by a subsequent contract between the parties, the trial court held that no contract of that kind was pleaded as a defense, and refused to admit any evidence thereof. The answer contains the following averments, to wit: "Where-

upon, on or about the ninth day of November, 1891, the said Haskins, being desirous of owning and purchasing from the defendants all of said bond, and thereby handling the said property himself, and of procuring the interest of these defendants therein, purchased of and from these defendants their two-thirds interest in said bond, for which the said Haskins then and there agreed that he would within ten days from the date thereof, to wit, within ten days from the ninth day of November, 1891, pay these defendants the sum of $2,000 therefor, and also agreed then and there to release under seal, and did then and there release, these defendants from any and all claims, debts, or dues by reason of any moneys advanced or expenses paid or otherwise in and about said bond and the working of said mines, and fully released these defendants from any obligations or liabilities to the said Haskins therefor, which was a part of the consideration of said transfer," etc. And it is further averred as follows, to wit: "That the said Haskins promised and agreed that upon such assignment being made, and such deeds being placed in escrow, as aforesaid, to pay to these defendants the sum of $2,000 therefor on December 5, 1891; but the said Haskins failed, neglected and refused to pay the same," etc. I think those allegations clearly set up a subsequent contract to the one sued on, as a defense in this suit, and that defendants should have been permitted to introduce all pertinent testimony offered by them in support of that defense. The trial court held that the subsequent agreement referred to was only an option, which option was waived by appellant [respondent]; and, as the money was not deposited as per terms of the escrow agreement placed with the deed, neither party was bound thereby, and all evidence in support of that defense was rejected for that reason. This ruling of the court was prejudicial error. There was an escrow agreement deposited with the deeds, that provided, in case $5,600 be paid to Martin Curran on or before December 5, 1891, and other payments therein enumerated be made, the deeds were to be delivered to E. D. Boyle, which option was not taken up or was waived; but that option is not the subsequent agreement pleaded as a defense to this suit.

The first eight specifications of error go to the question of the admission of certain testimony offered and admitted by the court in support of the allegations of the complaint. As that testimony tended to prove those allegations, there was no error in admitting it.

The ninth, tenth, eleventh, nineteenth and twentieth specifications of error go to the ruling of the court in excluding answers to certain cross-interrogations propounded to the witness Haskins. We do not think that there was prejudicial error in the rulings complained of.

The court erred in its rulings on the points made by specifications of error numbered 13 to 18, inclusive, and from 21 to 31, inclusive. By way of counterclaim, defendants alleged that plaintiff, Haskins, agreed that, upon an assignment being made of certain matters and certain deeds being placed in escrow by appellants, he would pay to them $2,000 on the 5th of December, 1891; and the testimony excluded by the rulings complained of in said assignments of error tends to prove a part of appellants' defense. It appears that the offer to introduce the testimony referred to, or a part of it at least, may not have been made at the proper time; but no objection was made on that ground, and only made on the grounds of materiality and relevancy or competency.

As to the thirty-second error specified, the court did not err in permitting witness W. W. Woods to testify as to what he considered a reasonable attorney's fee under the term of the contract sued on, that being one of the issues in the case.

The thirty-third alleged error is fully disposed of in a former part of this opinion. There was no error in overruling appellants' motion for a nonsuit.

As to the specifications of error numbered 34 to 39, inclusive, and 40, 41, 42, 43, 44, 45, 46, 47, 49, 51, 52, 53, 54 and 55, the testimony sought to be introduced as set out in said assignments of error would tend to prove the defense and counterclaim in this action, and the court erred in rejecting that testimony.

Specification No. 40 goes to the rejection of the instrument claimed by the appellants to contain the contract whereby Haskins agreed to pay the defendants $2,000 for their entire in-

terest in the partnership, and they to turn the same over to him. Mr. Curran testifies as follows: "Then on the 9th of November, 1891, he, Haskins, came up [to the mine], and I signed this agreement. He brought this agreement to me—that is, Mr. Haskins did—and asked me to sign it; and this is the agreement that me and Susie Hussey and Mr. Haskins entered into. I kept my copy. He gave me a copy, and he took this away with him, and I never saw it again until to-day. I have a copy of the same agreement that he left with me." Thereupon defendants offered said instrument in evidence, to the introduction of which plaintiff objected, on the ground that it was incompetent, and for the reason that it was an agreement that had never been in operation. The court sustained the objection, on the ground that there was no mutuality; that it would not bind one party, and would not bind the other. Counsel for defendants then stated that he desired to show what was done at the end of the ten days mentioned in said instrument, to wit, on November 19th. The court replied: "I don't see any materiality to the agreement at all until you show the agreement was entered into and in force." The witness Curran had already testified as above stated, that that contract was brought to him already prepared by Mr. Haskins, and that he (Curran), Mr. Haskins and Susie Hussey entered into the same; that Haskins left him a copy, and took the one signed by Curran away with him; and that witness had not seen it again until when presented to him on the witness stand. If the statement of the witness be true, that contract was a valid one between the parties, whether signed by Mr. Haskins or not; and the truthfulness of the testimony of the witness was a question for the jury. The court appears to have gone off on the theory that the written instrument last above referred to was not a valid contract between the parties, for the simple reason that Mr. Haskins had not signed it, entirely regardless of the truthfulness of Curran's testimony in regard to the making of said contract. This offered and rejected testimony was followed by offering testimony tending to prove that Curran and Hussey have nothing to do with the sale and development of said mines after the 19th of November, 1891, the date when Curran made deeds of conveyance of the said mines to Haskins

and Boyle, and that Haskins had full charge and management of promoting the sale of said mines and the development thereof thereafter; and, further, that on that date the payment of the $2,000 referred to in said written contract was extended to December 5, 1891. As to the truthfulness of all this testimony, the jury was the judge, and all relevant and proper testimony should have been submitted to the jury that tended to prove the issues made by the pleadings, under proper instructions.

The questions raised by specifications of error numbered 50, 56, 57, 58, 59, and 60 are, in substance, included in preceding assignments of error, and disposed of in former parts of this opinion.

Specifications of error numbered 61, 62 and 63 go to the giving of instructions 1, 2 and 3, asked by plaintiff and given by the court. Instruction No. 1 is as follows: "The jury are instructed that the plaintiff, having proven the contract alleged in the complaint, and the payment of the sums alleged to have been paid out for expenses on the mining claims, as provided in said contract, the burden is on the defendant to show that liability for repayment was avoided by some act that would relieve them in law from the liability under the contract." Instruction No. 2 is as follows: "There is no evidence that the plaintiff ever bought the interest of the defendants in the bond which Curran had on the mining properties, and no evidence that the contract sued on was ever canceled." Instruction No. 3 is as follows: "Under the evidence, the plaintiff is entitled to recover two-thirds of such amount as you may find that the plaintiff advanced under the contract, and, in addition thereto, is entitled to recover such sum as attorney's fees as you may find to be reasonable." By the first instruction, the jury is instructed that the plaintiff had proved the allegations of the complaint, thus taking away from them the very question of facts that they were sworn to determine themselves. By the second instruction, they are instructed that there was no evidence that plaintiff ever bought the interest of the defendants in the bond which Curran had on the mining properties, and no evidence that the contract sued on was ever canceled. This instruction takes from the jury the main points of this

defense and counterclaim, and instructs them that there is no evidence on those points. Aside from the testimony of Curran on those points, A. W. Steele and John Keating, witnesses for the defendants, both testified that Hawkins informed them that he had bought Curran out, or that Curran was out of it, and that he had it, and much of the evidence offered and rejected tended to prove those points. By the third instruction, they are instructed to bring in a verdict for the plaintiff for two-thirds of such sum as they might find plaintiff had advanced under the contract sued on. This instruction is peremptory, and leaves nothing for the jury to do except to ascertain two-thirds of the amount the plaintiff had advanced, and return a verdict for that sum. These instructions are radically wrong, and should not have been given.

The fourth instruction is excepted to, but it correctly states the law applicable to the feature of the case that it covers, and there was no error in giving it.

Instructions numbered 1, 2, and 3, asked by defendants, were refused by the court, and this is assigned as error. Those instructions state the law, and should have been given.

A new trial should have been granted, and it is so ordered. The judgment of the court below is set aside, and the cause remanded, with directions to the court to retry the case in accordance with the views expressed in this opinion. Costs awarded to appellants.

Morgan, C. J., and Huston, J., concur.

## ON REHEARING.

This is a petition for a rehearing. The first contention is that the court erred in holding that the answer sets up a subsequent contract to the one sued on as a defense and counterclaim, and that the defendants should have been permitted to introduce all pertinent testimony tending to prove that issue. It is urged that said subsequent contract was unilateral, it being one in which Haskins made no express contract on his part. As a matter of fact, that contention may be true, but the answer avers that Haskins did agree to said subsequent contract. Said averment is set forth in this case, and it is not necessary to set it out in full here.

It is substantially averred that Haskins promised to pay defendants $2,000 on November 19, 1891, and release them from all liability to him for money theretofore advanced for promoting the sale and development of the mines referred to, for their two-thirds interest in said partnership; and thereupon defendant Curran, on the nineteenth day of November, 1891, did transfer by deed, on the request of Haskins, said mining claims, and then and there delivered said deeds to said Haskins, which deeds were placed in the Coeur d'Alene Bank, with the deeds of the owners of said mining claims, which last-named deeds conveyed said claims to Martin Curran; also an escrow agreement authorizing the delivery of all of said deeds upon the payment to Martin Curran of the sum of $5,600 on or before December 5, 1891, and the further sum of $33,000 on or before June 1, 1892. It is also averred that, of said $5,600, Haskins was to receive $3,600, and Curran and Hussey $2,000, but said escrow agreement, on its face, fails to show that Haskins was to receive any part of said $5,600 in case it was paid to Curran. Immediately following the averment last above stated is the following: "That said Haskins promised and agreed that upon such assignment being made, and such deeds placed in escrow, as aforesaid, to pay to these defendants the sum of $2,000 therefor on December 5, 1891; but the said Haskins has failed, neglected and refused to pay the same, or any part thereof," etc. This allegation clearly avers that the $2,000 therein referred to was to have been paid as a consideration for the making of such assignment and such deeds placed in escrow as aforesaid, and not upon Haskins or his friend Boyle taking up said option. This averment is taken in connection with the averment that "Haskins, being desirous of owning and purchasing from the defendants all of said bond, and thereby handling the said property himself, and of procuring the interest of these defendants therein, purchased of and from these defendants their two-thirds interest in said bond," etc., for which he agreed to pay them $2,000; not in case that he concluded to exercise his option under said escrow agreement, but on condition that Curran and Hussey assign to him all of their interest in said original contract with the owners of said mines, and deliver possession to Haskins. It appears from the pleading that by the alleged

agreement of November 9, 1895, said $2,000 was due and payable on November 19, 1891; and the last averment in regard to said $2,000 would indicate that the time of its payment had been extended to December 5, 1891.

I think said allegations are sufficient to put in issue the making of said subsequent agreement, and any relevant proof thereof offered on trial should be admitted. The allegation, in effect, is that Haskins would pay to the defendants $2,000 for the performance of certain conditions and acts on their part; that they fully performed those conditions and acts as agreed; and that said $2,000 was due and not paid. I do not think that said averments refer to said escrow agreement. If the proof shows that they do refer to said escrow agreement, and to no other, that would be an end to that matter. The escrow agreement is in regard to the payment of money and the delivery of deeds. The contract averred and set forth as a counterclaim and defense was for a very different purpose. I do not hold that a subsequent contract was entered into (that is a fact for the jury), but do hold that a subsequent contract is pleaded as a defense and counterclaim in this suit. The payment of the $5,600 mentioned in the escrow agreement was optional; the payment of the $2,000 mentioned in appellants' exhibit No. 9 was not optional, if the averments of the answer are true.

The counsel for petitioner criticise the following statement contained in the opinion in this case, to wit: "The trial court held that the subsequent agreement referred to was only an option, which option was waived by appellant"—and insist that the statement is incorrect, in that appellants had nothing to do with waiving said option. Through some oversight, the word "appellant" was used in the quotation referred to, instead of "respondent." That error has been corrected. The last word of said quotation, to wit, "appellant," has been changed to "respondent"; so that criticism, which was a just one, will not apply to the opinion as corrected.

We find no reason for changing our views as expressed in the opinion heretofore given in this case. The petition for a rehearing is denied.

Morgan, C. J., and Huston, J., concur.