163 P.3d 247

**James W. BERRY, Plaintiff–Respondent,**

v.

**Ed OSTROM, Defendant–Appellant.**

**No. 32561.**

Court of Appeals of Idaho.

June 20, 2007.

Featherston Law Firm, Sandpoint, for appellant. Brent C. Featherston argued.

Bruce H. Greene, Sandpoint, for respondent.

GUTIERREZ, Judge.

Ed Ostrom appeals from the district court's decision reversing the magistrate's judgment granting Ostrom's motion to dismiss for lack of an accounting after determining that the debt in dispute was partnership-related. We affirm the decision of the district court and remand for further proceedings.

## I.

## BACKGROUND

Northtown Investments, a general partnership, purchased land and developed the Bonner Mall near Sandpoint, Idaho. In 1986, Northtown sold its interest in the completed mall to Harry Magnuson. As part of

the sale, Magnuson was to assume payment on a $150,000 mall-related loan from U.S. Bank and indemnify the Northtown partners against all future claims. After Magnuson declared bankruptcy, U.S. Bank threatened to sue Northtown to recover the remainder of the loan.

On June 9, 1997, James W. Berry wrote to the "Bonner Mall Partners" stating that U.S. Bank had agreed to make a $50,000 loan to settle the impending litigation between the bank and Northtown Investments, and that "[i]t was agreed by the partners that we would pay in accordance to our Partnership Agreement." Berry then outlined three possible payment allocations, each depending on how many partners agreed to the payments and weighted by those partners' interests in the partnership as provided in the partnership agreement. Five of the fourteen Northtown partners, including Ostrom and Berry, signed a promissory note on June 19, 1997, to pay approximately $50,000 to U.S. Bank. These were the five partners listed in the third and least favorable payment scenario. The next day, Berry wrote to an attorney with copies to Ostrom and the other partners who agreed to sign the note, stating that the Northtown Partners would contribute $50,000 towards the $300,000 settlement proposal by U.S. Bank. Berry also identified another Northtown partner who separately agreed to $190,000 in payment of his share. Berry later testified at deposition that some of the general partners did not sign the promissory note because they did not agree to it.

On March 7, 2003, Berry filed suit against Ostrom alleging he had failed to pay his $8,360 *pro rata* share of the note, which was now paid in full. Berry then filed a motion for summary judgment. In turn, Ostrom filed a motion to dismiss which, as amended, claimed Berry's action was premature absent a winding up of partnership affairs. By affidavit, Ostrom asserted his belief that "Berry over time has converted valuable assets of the corporation for which he has never given an accounting," that "[i]f there is any obli-

gation owed by me, it would necessarily be reduced if an accounting were had" because Ostrom's former wife, whom he divorced in 1988, "insisted on keeping her community interest in the partnership," and that "it would be grossly unfair to assess me for any money absent an accounting by all the partners." Nevertheless, Ostrom did not file a counterclaim for an accounting.

At a May 7, 2004, hearing on the motions, the magistrate reasoned as follows in agreement with Ostrom's position:

> We have [a group of] partners who in order to … settle a potential liability incurred by the partnership … go to the bank and each sign individually to take out a loan to settle or buy off this potential claimant in order to minimize their own business and personal liabilities in the future.
>
> That is, in the court's view under the circumstances, clearly an act in furtherance of the partnership business. The business being one to also not just make profits but minimize liabilities of the business and the individual partners….

Because neither party claimed that the partnership was terminated or in the process of winding up and there was no genuine dispute over the reason for the debt, the magistrate concluded as a matter of law that the debt was incurred in furtherance of partnership business. The magistrate therefore determined Berry's claim was not ripe absent an accounting of partnership affairs. The magistrate allowed twenty days for Berry to file an amended complaint alleging an action for partnership dissolution and for a winding up of partnership affairs. When an amended complaint was not filed within twenty days, the magistrate dismissed the case.

On intermediate appeal, the district court reversed the magistrate, determining that because a winding up and accounting may have already occurred informally and because the note was not signed in the name of the partnership, a genuine issue of material fact existed as to whether the promissory note debt was a partnership obligation.[1] On

---

1. The district court upheld the magistrate's denial of Berry's motion for summary judgment and    Berry chose not to appeal.

appeal now to this Court, Ostrom contends that the district court erred by holding that material factual issues precluded summary judgment for Ostrom and by applying terms of I.C. § 53–3–405(b), which was adopted in 2001, after the transactions occurred that are at issue here.

## II.

## STANDARD OF REVIEW

Summary judgment under Idaho Rule of Civil Procedure 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App.1986). When assessing a motion for summary judgment, all controverted facts are liberally construed in favor of the non-moving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct.App.1994).

On review of a decision of the district court rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *Hentges v. Hentges*, 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988).

## III.

## DISCUSSION

In response to Ostrom's motion to dismiss, Berry argued that the promissory note was not a partnership debt barring suit against Ostrom absent an accounting. The magistrate disagreed, determining that, as a matter of law, the debt was partnership-related because the underlying material facts were undisputed and suggested no other result. On appeal, the district court viewed the case conversely, remanding the matter after finding an issue of material fact as to whether a winding up of the partnership had already occurred. The district court also indicated that the magistrate's legal analysis was erroneous for not taking into account the 2001 revisions to Idaho's Uniform Partnership Act, I.C. §§ 53–3–101, *et seq.* (RUPA). Under RUPA an accounting is not necessarily a prerequisite to the availability of other remedies a partner may have against the partnership or other partners. *See* I.C. § 53–3–405(b), cmt. n. 2.[2]

It is undisputed that the promissory note in question was given in order to satisfy a debt that originally was an obligation of the partnership. Nevertheless, we find it unnecessary to resolve whether there are factual issues about a past informal accounting or whether RUPA or prior law applies here because, even under the pre–2001 law advocated by Ostrom, no accounting is required before the promissory note may be enforced by Berry.

Under Idaho law that preceded adoption of RUPA, partners generally could not maintain actions at law among themselves regarding partnership business until after the partnership was wound up and an accounting was performed. *Mays v. Davis*, 132 Idaho 73, 75, 967 P.2d 275, 277 (1998) (citing *Haskins v. Curran*, 4 Idaho 573, 579, 43 P. 559, 561 (1895)); *see generally* Annotation, *Actions at Law Between Partners and Partnerships*, 21 A.L.R. 21 (1922); 58 A.L.R. 621 (1929); 168 A.L.R. 1088 (1947). "The reason for the rule which denies to one partner the right to sue another at law before a settlement is had is apparent. One partner does not own or have

---

**2.** Idaho Code Section 53–3–405(b) states in relevant part:

> (b) A partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business....

Official Comment 2 to this statute states:

> ....

> Under RUPA, an accounting is not a prerequisite to the availability of the other remedies a partner may have against the partnership or the other partners. That change reflects the increased willingness courts have shown to grant relief without the requirement of an accounting, in derogation of the so-called "exclusivity rule...."

a right to any specific portion of the partnership property," where the interest of each partner extends to every portion of such property. *Boehme v. Fitzgerald,* 43 Mont. 226, 115 P. 413, 413 (1911). Nevertheless, even under this prior law, it was well-established that "partners may maintain actions among themselves 'if the relief requested is not so connected to partnership transactions as to require an accounting or where one partner seeks specific equitable relief.' "[3] *Mays,* 132 Idaho at 75–76, 967 P.2d at 277–278; *Havelick v. Chobot,* 123 Idaho 714, 718, 851 P.2d 1010, 1014 (Ct.App.1993).

The general rule with its exception "grows out of the legal relations between partners, and rests upon these two principles: First, the primary right of a partner, as against his co-partner or the firm, is an equitable right, and his remedial right is to an accounting. Secondly, the right of one partner to recover from his co-partner a certain sum can arise only from a promise, express or implied." *Weidig v. Moore,* 11 Ohio Dec. Reprint 83, 83 (1890). Applying the general rule to a situation similar to the one at hand, another court held:

> Where two independent parties owe a joint debt, and one pays the whole, which he may be compelled to do by the creditor, the law, in the absence of any express agreement of such debtors, implies a promise of the co-debtor, to him who has thus paid the whole, to pay him one half of the common debt thus discharged. But when one partner thus pays the whole debt, the law implies no such promise; it merely authorizes him to charge the whole to the firm in partnership account, of which he will have the benefit, as a credit, on settlement of that account, voluntarily, or by a suit in equity.

*White v. Harlow,* 71 Mass. 463, 5 Gray 463, 468 (1855).

The instant case better fits the exception, under which courts have held that "where a single partnership venture or item of account, by express agreement of the partners, has been segregated from other partnership ventures or items of account so as to be taken out of the general partnership account, an action at law may be maintained by one partner against the other, to settle their rights in the transaction, even though there be other unadjusted items not segregated." Annotation, *Actions at Law Between Partners and Partnerships,* 21 A.L.R. 21, at V(a)(3). For example, courts have held that "If one partner gives the other his promissory note or his separate acceptance on partnership account, an action at law will lie on such note or bill, since such an instrument itself constitutes an acknowledgment of a separate debt." *Id.* at V(a)(5).

Idaho has long recognized the general rule and its exception for actions between partners. In *Haskins,* the appellants contended that "as the parties to said contract were partners, the respondent cannot maintain this action, for the reason that one partner cannot maintain an action at law against his copartners for advances made by him on account of the firm, until, at least, a settlement and an accounting of partnership matters has been had, and a balance struck and agreed upon by the partners...." *Haskins,* 4 Idaho at 579, 43 P. at 561. The Idaho Supreme Court recognized that "[a]s a rule, advances to the firm and advances from it do not constitute debts, strictly speaking, but are only items in the accounts between the partners in the winding up of the concern; and in that class of cases a suit for an accounting is as necessary to settle the account as in the case of any other partnership accounts." *Id.* The *Haskins* court determined, however, that the case before it did not fall within the general rule and concluded:

> Here is an express promise by Curran and Hussey to repay their share of advances

---

3. The second half of the *Havelick* accounting exception—"or where one partner seeks specific equitable relief"—does not stand on its own. Rather, it merely serves to allow equitable remedies when proper under the first half of the exception. *See Yoder v. Hooper,* 695 P.2d 1182 (Colo.Ct.App.1984) (Because a constructive trust is a creature of equity ... *and* because complete relief could be granted without resort to an accounting, no such accounting was necessary. (Emphasis added)), *cited in Havelick v. Chobot,* 123 Idaho 714, 718, 851 P.2d 1010, 1014 (Ct. App.1993).

made by Haskins on or before June 3, 1982, including interest and costs of collecting the same. Under those circumstances, the money so advanced becomes the debt of the promisors, recoverable by direct action therefore, without dissolution of partnership or adjustment of partnership accounts.

*Id.* at 580, 43 P. at 562. And more recently, both this Court and the Idaho Supreme Court have observed that one partner may sue another partner at law on transactions between them as individuals involving matters either never connected with the partnership business, or not so connected as to involve a partnership accounting. *Mays,* 132 Idaho at 75–76, 967 P.2d at 277–78; *Havelick,* 123 Idaho at 718, 851 P.2d at 1014.

In the case at hand, after drawing all reasonable inferences in favor of Berry, the nonmoving party, as we must do on summary judgment, the evidence establishes that the sum borrowed by Ostrom and the other signators to settle the particular partnership liability was a debt of the promisors not so intertwined with other partnership transactions as to require an accounting. Berry outlined three possible payment scenarios, which varied according to how many partners eventually agreed to sign the promissory note. Ostrom agreed to participate under the payment scenario that applied with only five partners signing. As a signator of the note, he therefore contractually bound himself to pay his *pro rata* share, independent of any other rights or obligations that he may have held as a partner. By terms of I.C. § 28–3–116,[4] he became liable for contribution to any of the other makers of the note who paid part of Ostrom's share. Therefore, no accounting of other partnership accounts is necessary before the trial court acts on Berry's claim.

## IV.

### CONCLUSION

The district court's decision reversing the magistrate's judgment granting Ostrom's motion to dismiss is hereby affirmed. The matter is remanded for further proceedings consistent with this opinion. Because we are remanding for further proceedings and because Berry is not yet the prevailing party, we decline to award attorney fees under either the terms of the promissory note or I.C. § 12–120(3). Upon judgment being entered, the trial court can award attorney fees incurred in this appeal to the party who ultimately prevails. Costs are awarded to Respondent Berry.

Chief Judge PERRY and Judge LANSING concur.

---

**4.** Idaho Code Section 28–3–116 states:

**Joint and several liability—Contribution.**—(1) Except as otherwise provided in the instrument, two (2) or more persons who have the same liability on an instrument as makers, drawers, acceptors, indorsers who indorse as joint payees, or anomalous indorsers are jointly and severally liable in the capacity in which they sign.

(2) Except as provided in section 28–3–419(5) or by agreement of the affected parties, a party having joint and several liability who pays the instrument is entitled to receive from any party having the same joint and several liability contribution in accordance with applicable law.

(3) Discharge on one (1) party having joint and several liability by a person entitled to enforce the instrument does not affect the right under subsection (2) of this section of a party having the same joint and several liability to receive contribution from the party discharged.