848 P.2d 435

**The COUNTY OF CANYON, a political subdivision of the State of Idaho, Plaintiff–Respondent,**

**v.**

**William R. WILKERSON, aka Bob Wilkerson and Imogene Wilkerson, husband and wife, dba Jeannie's Lace Place, Defendants–Appellants.**

**No. 19351.**

Court of Appeals of Idaho.

March 1, 1993.

Jonne' E. Kohler, Nampa, for defendants-appellants.

David L. Young, Canyon County Atty., Charles L. Saari, Deputy County Atty., Caldwell, for plaintiff-respondent. Charles L. Saari argued.

WALTERS, Chief Judge.

This case involves the regulation by a county zoning ordinance of commercial activities conducted in a residence. After trial to the court without a jury, the district court entered judgment enjoining the defendants-appellants Wilkersons from operating a retail sales business on their property in violation of a county ordinance restricting the permissible uses of residential property. On appeal, the Wilkersons contend the district court erroneously concluded that their existing business was not an allowed use predicated upon the establishment of a prior nonconforming use through which they allegedly had acquired a right to conduct business under the ordinance. For reasons to follow, we affirm the judgment.

The plaintiff, Canyon County, brought this action to enforce the use restrictions contained in the 1979 Canyon County Zoning Ordinance as it applies to the Wilkersons' property. The property in question is situated near Nampa, Idaho, in an unincor-

porated part of Canyon County and in an area designated as "R–1" under the Ordinance. The R–1 zone is predominately for use as single-family residences but also permits "home occupation" businesses,[1] limited agricultural activities, planned unit developments, public utility transmission facilities and accessory uses. An investigation by county authorities responsible for the supervision and enforcement of the zoning ordinance led to the conclusion that the Wilkersons were operating a retail sales business on their premises in contravention of the uses permitted in an R–1 zone.

The alleged retail business, known as "Jeannie's Lace Place," has been conducted by the Wilkersons in their home since 1985. This business sells lace, notions, ribbons, fabric and hand-crafted items. At trial, the Wilkersons conceded that their business does not qualify as a "home occupation" under the Ordinance because of the sale of merchandise not produced by them on the premises. Instead, as a defense to the County's request for an injunction, the Wilkersons claimed that prior to adoption of the Ordinance in 1979, Mr. Wilkerson was operating a carpet sales and installation business out of his home, which was a nonconforming use of their residential property,[2] and that Jeannie's Lace Place is permissible under the Ordinance as a continuation of the right to conduct a nonconforming use established by the carpet en-

---

1. The term "home occupation" is described in the Ordinance as:

> Any gainful occupation engaged in by an occupant of a dwelling unit including handicrafts, dressmaking, millinery, laundering, preserving, office of a clergyman, teaching of music, dancing and other instruction, and other like occupancies which meet all of the following conditions:
>
> 1. The use is clearly incidental and secondary to the use of the dwelling for dwelling purposes.
> 2. The use is conducted entirely within a dwelling and is carried on by the inhabitants thereof.
> 3. No article shall be sold or offered for sale on the premises, except such as is produced by the occupants on the premises.
> 4. The use does not change the character of the dwelling or adversely affect the uses permitted in the residential district.
> 5. The use requires no additional off-street parking space.
> 6. No persons are employed other than those necessary for domestic purposes.
> 7. Not more than one-fourth of the gross area of one floor of said dwelling is used for such use.

2. The term "nonconforming use" is defined in the Ordinance as "[a]ny use lawfully occupying a building structure or land at the effective date of this ordinance or of subsequent amendments thereto, which does not conform to the regulations for the district in which it is located." The Ordinance also contains the following explicit conditions relating to nonconforming uses:

> 1. Any use lawfully occupying a building or land at the effective date of this ordinance or of subsequent amendments thereto, which does not conform to the regulations for the district in which it is located shall be deemed to be nonconforming use and may be continued. Maintenance and minor repairs necessary to keep nonconforming uses in sound condition during such continuance shall be permitted.
> 2. A building having a nonconforming use may be enlarged or extended only if thereafter the entire building is devoted to a conforming use.
> 3. No building partially occupied by a nonconforming use shall be altered in such a way to permit the enlargement or expansion of the space occupied by such nonconforming use.
> 4. No nonconforming use may be enlarged or extended in such a way as to occupy any required open space, or any land beyond the boundaries of the lot on which it existed at the effective date of this ordinance, nor may any such nonconforming use displace any conforming use in the same building or on the same parcel.
> 5. Any nonconforming building destroyed by fire or other calamity to an extent of fifty (50) percent or more of the appraised value may not be restored unless such restoration shall make the building a conforming building and any intended use shall be a conforming use; provided however, that nothing in this ordinance shall be construed to prevent the restoration and the resumption of former lawful use of any building that is damaged or partially destroyed by fire, or other calamity, to the extent of less than fifty (50) percent, provided that such restoration is started within one (1) calendar year and diligently prosecuted to completion.
> 6. Whenever a nonconforming use of land or building has been discontinued for a period of one (1) year, or whenever there is evidence of a clear intent to abandon a nonconforming use, such use shall not thereafter be reestablished, and the uses of the premises thereafter shall be in conformance with the regulations of the use district.

terprise.[3]

The district court, after considering the evidence presented on the question of the Wilkersons' use of their property, found that Mr. Wilkerson's previous carpet business did not create a nonconforming use of the Wilkerson home. The court summarized the evidence leading to this conclusion. The court noted that Mr. Wilkerson had testified he had a carpet sales and installation business in the home from 1976 to 1986; that during this period of time, Mr. Wilkerson was a fireman for the City of Nampa and as a side business he laid carpet on his days off; that occasionally customers looked at carpet and pad samples at the Wilkersons' home and that Mr. Wilkerson stored carpet and pad in his garage. However, the court further determined that the record clearly established that Mr. Wilkerson was not operating a retail sales operation. According to the court's view of the evidence, Mr. Wilkerson was not a distributor for any carpet mills; he either bought carpet at close-out sales from local dealers or he ordered carpet from local dealers. Other than business cards, he did not advertise his business. He did not keep regular hours; presumably, his availability for carpet sales and carpet laying depended on his schedule as a

fireman. Finally, the court noted Mr. Wilkerson's testimony that he did not make a profit on carpet sales at all; rather, he gave carpet to his customers at his cost. Based on this evidence, the court concluded it could not find that the carpet business created a nonconforming use at the Wilkersons' home prior to 1979.

On appeal, the Wilkersons dispute the court's conclusion because of unrefuted testimony from the Wilkersons and two other witnesses who stated that carpet occasionally had been sold from the Wilkersons' home. They point to this evidence to establish that, contrary to the court's conclusion, the Wilkersons had developed a nonconforming use through the carpet business, which did not qualify as a "home occupation" inasmuch as it involved the sale of items—carpet and pad—not produced on the premises.[4] They then assert that, because they had an established nonconforming use through the carpet business, Jeannie's Lace Place—also a nonconforming use because it did not qualify as a "home occupation"—was permissible simply as an intensification of the prior nonconforming use existing by virtue of the carpet business.[5]

3. The Wilkersons also raised a claim of estoppel as a defense against the County's action to enforce the Ordinance. The district court found that the evidence presented at trial did not establish such a claim. The Wilkersons do not challenge that aspect of the district court's decision on this appeal.

4. Arguably, the carpet business also was not within the "home occupation" requirements because it was not a "use ... conducted entirely within a dwelling and ... carried on by the inhabitants thereof," in light of Mr. Wilkerson's performance of his carpet-laying activities outside of his home. See footnote 1, supra, subpart 2. We also note that the testimony concerning purported sales of carpet at the Wilkersons' home was exceedingly vague with regard to details such as quantities or sizes of pieces sold; amounts of money charged or received and whether in fact a profit or loss resulted from any particular sale; frequency of occurrence of any sales; and specific dates to show that any sales in fact occurred either before or after the effective date of the Ordinance.

5. The district court also considered Wilkersons' "intensification" approach. Without retreating

from the conclusion that the carpet business was not a prior, nonconforming use, the court further held:

The Court finds that Jeannie's Lace Place unlawfully expanded or enlarged rather than intensified the nonconforming use created, if any, by Mr. Wilkerson's carpet business. The carpet business and Jeannie's Lace Place do not use the real property in the same manner. Jeannie's Lace Place has had a greater adverse impact on the neighboring properties than the carpet business since there has been an increase in the traffic generated, greater activity in and about the premises due to the number of customers coming to a full time business with set hours, the erection of a large sign advertising the business, the paving of part of the front yard and a circular driveway, [and] the building of a second garage to house the business....

The Court therefore finds that even if the carpet business was a nonconforming use, [the] defendants have unlawfully enlarged or expanded said use in violation of the Ordinance. [Emphasis added.]

Simply stated, the Wilkersons contend that a few sales of carpet materials, violating the use permitted as a "home occupation," made the carpet business a nonconforming use. The district court apparently took a different view, concluding that the evidence of sales of carpet or pads did not rise to the level of creating a nonconforming use of Wilkersons' residential property. Implicit in the court's determination is the reasonable inference that the Wilkersons' carpet business primarily was a service-oriented enterprise involving Mr. Wilkerson's activities in laying carpet at locations outside of his home and that the home was only used incidentally as one of the places where he could be reached to contract with him for his services in laying carpet, as a place where his bookkeeping records were maintained and his wife could schedule his contracts on a calendar, and as an area to store his tools, equipment, carpet and pad samples and his van which he used to transport himself and his equipment to the job locations.

The district court's determination is further supported by testimony presented by the County from two individuals who had been, or were yet, engaged in the business of both selling and installing carpet. Each of these witnesses testified that he separately had visited Wilkersons' home while Mr. Wilkerson was involved in his carpet business and, based upon his personal experience in the sale and installation of carpet and his observations of the Wilkersons' residence where the Wilkersons' carpet business was centered, neither witness would characterize the Wilkersons' carpet business as one he could identify as engaging in the sales of carpet. Clearly, the court was not persuaded that any occasional sales by Wilkerson of carpet, carpet samples, or carpet pads stored at his home significantly changed the true character of his carpet business, i.e., providing a carpet-laying service to other individuals at locations away from the Wilkersons' residential property. An activity such as this, the court essentially concluded, did not constitute a violation of the R–1 use restrictions in the Ordinance and therefore did not become a nonconforming use upon adoption of the Ordinance.

■ We agree with the district court's conclusion. The district court essentially determined that the Wilkersons failed to satisfy their burden of proof on the affirmative claim that their right to conduct a retail business in their residence was predicated upon the existence of a prior nonconforming use—the alleged carpet business. Whether the required burden of proof on a particular issue has been met is a question for the trier of fact to decide in the first instance inasmuch as that court has the primary responsibility for weighing the evidence. *In re Estate of Bogert*, 96 Idaho 522, 526, 531 P.2d 1167, 1171 (1975), *citing In re Estate of Cooke*, 96 Idaho 48, 524 P.2d 176 (1973). The trial court's decision that a claim has not been proved is entitled to great weight on appeal. *Id.; Larkin v. State*, 115 Idaho 72, 764 P.2d 439 (Ct.App. 1988); *Ustick v. Ustick*, 104 Idaho 215, 657 P.2d 1083 (Ct.App.1983).

■ Where the lower court reaches a determination that is contrary to the claim alleged by a party, based on the evidence presented on both sides of the issue, the court effectively decides that the evidence is insufficient to support that party's contention. *Sivak v. State*, 119 Idaho 211, 804 P.2d 940 (Ct.App.1991). In *Viehweg v. Thompson*, 103 Idaho 265, 647 P.2d 311 (Ct.App.1982), we characterized this as a "negative" finding, i.e., that a party has failed in its burden of proof. On appeal, the appellate court's standard for review of such a finding is to determine if the lower court's decision is "clearly erroneous." *Id.*, citing I.R.C.P. 52(a). *See also, Weaver v. Millard*, 120 Idaho 692, 819 P.2d 110 (Ct. App.1991); *Matter of Estate of Logan*, 120 Idaho 226, 815 P.2d 35 (Ct.App.1991); *Sivak v. State, supra; Larkin v. State, supra; Young v. State*, 115 Idaho 52, 764 P.2d 129 (Ct.App.1988); *Farrell v. Brown*, 111 Idaho 1027, 729 P.2d 1090 (Ct.App. 1986); *Ustick v. Ustick, supra.*

■ Under the restrained standard of clear error customarily applied to factual issues, a factual finding will not be deemed clearly erroneous unless, after reviewing

the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), *cited in Quick v. Crane,* 111 Idaho 759, 768, 727 P.2d 1187, 1196 (1986); *State v. Bird,* 119 Idaho 196, 198, 804 P.2d 925, 927 (Ct.App.1990); *State v. Curtis,* 106 Idaho 483, 490, 680 P.2d 1383, 1390 (Ct.App.1984); *State v. Moulds,* 105 Idaho 880, 890, 673 P.2d 1074, 1084 (Ct.App.1983); *and State v. Campbell,* 104 Idaho 705, 711, 662 P.2d 1149, 1155 (Ct.App.1983). *See also* IDAHO APPELLATE HANDBOOK, *Standards of Appellate Review,* § 3.3.2 (2d ed. 1989). Finally, clear error will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence. *Barber v. Honorof,* 116 Idaho 767, 780 P.2d 89 (1989), *citing Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). On appellate consideration, we defer to the district court's special opportunity to determine the credibility of the witnesses who have testified, *Sivak v. State, supra,* and to weigh the evidence presented. *In re Estate of Bogert, supra.*

 We have recited the evidence noted by the trial court and the evidence suggested by each of the parties to support their respective positions. From our review of the record, we are persuaded that the evidence was conflicting, uncertain and inconclusive on the question of whether the carpet business was a nonconforming use. We are not left with a definite and firm conviction that a mistake was made when the district court essentially found that the Wilkersons had not met their burden of proof; further, the findings made by the court in reaching that determination are supported by substantial and competent, although conflicting, evidence. Accordingly, we cannot say that the decision reached by the district court upon weighing the evidence presented was clearly erroneous.

Having sustained that decision, we also affirm the judgment and permanent injunction, based upon the Wilkersons' concession that otherwise Jeannies' Lace Place was a nonconforming use under the Ordinance.

Costs to the respondent, Canyon County. No attorney fees on appeal are awarded.

SWANSTROM, J., and SILAK, Acting Judge, concur.