851 P.2d 1010

**L.J. "Frank" HAVELICK and Virginia Havelick, husband and wife, Plaintiffs–Respondents,**

v.

**Edwin F. CHOBOT, Jr., Defendant–Appellant.**

**No. 18730.**

Court of Appeals of Idaho.

April 28, 1993.

Robert E. Covington, III, Coeur d'Alene, argued for defendant-appellant.

Charles F. Bean, Coeur d'Alene and Charles M. Anderson, Spokane, WA, argued for plaintiffs-respondents.

WALTERS, Chief Judge.

Edwin Chobot appeals from a denial of a motion for an accounting and a judgment entered on a jury verdict awarding damages to Chobot's partners in a beer and wine distributorship, Frank and Virginia Havelick. Chobot asserts that the district court erred when it held that an accounting of the partnership was not necessary because one had been performed in the partnership's bankruptcy proceedings, and that the court wrongly submitted to the jury issues relating to breach of a fiduciary duty and liability for alleged tortious interference with a contract. We affirm.

### Facts and Procedural Background

In 1975, the Havelicks and Chobot formed a partnership to operate a beer and wine distributorship known as "Frank's

Distributors," in the Sandpoint area. Frank Havelick became the managing partner. Chobot, a physician, acted only as an investor, living outside of Idaho much of the time and not concerning himself with the daily affairs of the business. The two primary assets of the business were wholesale equity agreements with Anheuser–Busch and the G. Heilman Brewing Company, which authorized the sale of products provided by those companies.

As part of the wholesale equity agreement with Anheuser–Busch the partnership was required to provide a refrigerated storage facility for beer and wine. The Havelicks, using their own money and credit, purchased land and constructed a suitable warehouse. Chobot did not invest in the building or participate in its construction because he did not believe it was a good investment. Thereafter, the Havelicks leased the building to the partnership.

The business lost money in the early 1980s and in 1985 Chobot sued the Havelicks alleging that Frank Havelick was physically disabled because of a stroke he had suffered and that Chobot was entitled to acquire the Havelicks' interest in the business under the partnership agreement. Chobot also sought to have a receiver appointed, arguing that the Havelicks had mismanaged the business, had taken financial advantage of the partnership for personal gain, and had caused significant financial losses. In September, 1985, an interim order was entered directing that an accountant conduct a financial review of the business, and that the partners exercise mutual control and management. An "audit accounting" was performed regarding several years of partnership business. No irregularities were found.

Faced with insolvency in 1985, the partners negotiated a sale of the partnership to Bill Jones Distributors (Jones), a local beer and wine distributor with thirty years experience. Anheuser–Busch approved of the sale, a prerequisite dictated by Anheuser–Busch and the only way its wholesale equity agreement could be transferred. In fact, Jones became the only approved purchaser. Ultimately, the Havelicks, Chobot, and Jones executed two "Asset Purchase Agreements." Chobot signed both agreements. Later, however, he refused to sign the closing documents, citing alleged irregularities and a desire to buy the distributorship for himself. His attempt to buy the distributorship was nullified when Anheuser–Busch stated that it would not approve of a sale to him because he did not have the necessary experience. Still, he refused to execute the closing documents.

In September, 1986, the Havelicks instituted the instant action against Chobot, seeking specific performance of the second of the two purchase agreements with Jones, dated March 19, 1986. The Havelicks also alleged that Chobot had engaged in misrepresentation, breach of fiduciary duty, intentional interference with the purchase agreement and the Havelicks' business opportunity, wanton, willful and malicious conduct, and defamation. The complaint also requested that the partnership be dissolved and that the court supervise the winding up of partnership affairs.

The Havelicks moved for a bifurcated trial. The court granted the motion and entertained the specific performance issue first. In October, 1986, the court issued a memorandum decision directing specific performance of the March 19, 1986, purchase agreement. The decision was based in part on the following factors: (1) no other adequate remedy was available; (2) Frank's Distributors was insolvent and threatened with litigation by creditors; (3) the wholesale equity agreements with Anheuser–Busch and the G. Heilman Brewing Company, the foundations of the distributorship, would be lost should bankruptcy occur; and (4) Jones, the only approved purchaser, was ready, willing and able to perform. The day the court entered its decision, Chobot, without notice to the Havelicks, placed the partnership in involuntary bankruptcy.

At the bankruptcy court, the Havelicks and Chobot appeared as creditors of the partnership. The court approved the sale of the assets to Jones, and the funds from the sale were distributed to satisfy the partnership debts. Chobot challenged cer-

tain claims as not representing actual partnership debts due to Frank Havelick's alleged mismanagement, but those claims apparently were not allowed. In December, 1987, the bankruptcy court issued an order confirming the plan of reorganization, and the business was ordered sold to Bill Jones.

Thereafter, a trial was scheduled in the state district court for the Havelicks' remaining claims. At one time the partners decided to enter a stipulated settlement, but on the day specified Chobot informed the court that he felt an accounting should be performed. He then moved for an accounting, and the Havelicks moved to enforce the parties' settlement agreement and for sanctions.

The court denied the motions. Addressing Chobot's demand for an accounting, the court held that the proceedings in bankruptcy court completely encompassed whatever accounting was required by statute or warranted by the facts. A jury trial was held on the Havelicks' claims of tortious interference with the contract with Bill Jones, breach of fiduciary duty, and defamation. The jury returned a verdict for the Havelicks, awarding them $275,894 in damages. Judgment was entered for that amount plus costs and attorney fees. Chobot moved for a new trial, which was denied. He appeals, asserting that the court erred when it denied his motion for an accounting and wrongly submitted issues to the jury as to (1) the Havelicks' "premature" claim of breach of fiduciary duty; and (2) Chobot's liability for tortious interference with the Bill Jones contract.

## Standard of Review

■ The errors Chobot asserts present mixed issues of law and fact. As an appellate court, we will defer to findings of fact based upon substantial evidence, but we will review freely the conclusions of law reached by stating legal rules or principles and applying them to the facts found. *Staggie v. Idaho Falls Consol. Hospitals,* 110 Idaho 349, 715 P.2d 1019 (Ct.App.1986). Thus, we will uphold factual findings made by the district court so long as they are not "clearly erroneous." *Id.* We will review

freely any statements of law and the court's conclusion that the facts as found did not entitle Chobot to relief. *Id.*

## Request for Accounting

Chobot's primary argument is that the court erred when it determined that he was not entitled to an accounting because one had already been completed in the bankruptcy proceeding which dissolved the partnership and distributed its assets. We find no error.

■ Before discussing Chobot's argument, we find it helpful to address the Havelicks' contention that Chobot's motion for an accounting was improper because he did not assert a counterclaim for an accounting. We point out that the Havelicks did not specifically demand an accounting in their complaint, but asked the court "to direct dissolution of the partnership ... and to supervise the winding up of its affairs." However, an accounting is an integral part of ending a partnership. *See Ramseyer v. Ramseyer,* 98 Idaho 47, 558 P.2d 76 (1976). The district court correctly construed the complaint as requesting an accounting. The Havelicks' contention that Chobot was required to assert a counterclaim for an accounting is not persuasive.

> The ordinary rule in equity that affirmative relief will not be granted to a defendant unless he makes claim to it by a cross bill or counterclaim has been held inapplicable in an action for an accounting.

1 AM.JUR.2D *Accounts and Accounting* § 61 (1962). This rule exists because a complaint requesting an accounting essentially represents an offer to pay any balance that may be found against the plaintiff. An accounting results in a rendering of judgment for the balance ascertained to be due. 1 AM.JUR.2D *Accounts and Accounting* § 44 (1962). Upon an accounting both parties are actors, and either the plaintiff or defendant is entitled to the aid of the court to recover the balance that may be found in a party's favor. *Id.* at § 61. The exception to the general rule that affirmative relief must be requested in a counterclaim is inapplicable, however,

where the relief granted is beyond the scope of the complaint. *Id.* at note 9. In the instant case, the relief granted was within the scope of the Havelicks' complaint, so the exception applies.[1]

■■■ Although the right to an accounting may arise as prescribed in I.C. § 53-322, an accounting is generally held to be an equitable proceeding, designed to comprehensively investigate partnership transactions and adjudicate the rights of the partners. *Arnold v. Burgess,* 113 Idaho 786, 747 P.2d 1315 (Ct.App.1987). Its goal is to ascertain the value of a partner's interest in the partnership as of the date the right to an accounting accrued and then to determine any profit attributable to use of the partner's right in the partnership property. *Id.* If partners are unable to settle their own affairs, an action in equity for an accounting is the appropriate remedy. *Ramseyer, supra.* Generally, partners may not maintain actions at law among themselves until after an accounting is performed, if the subject of the action relates to partnership transactions. 59A AM.JUR.2D *Partnership* § 542 (1987); *see also Arnold, supra.* However, actions between partners are allowed if the relief requested is not so connected to partnership transactions as to require an accounting or where one partner seeks specific equitable relief. *Kelly v. Tracy,* 209 Or. 153, 305 P.2d 411 (1956); *Smith v. Hurley,* 121 Ariz. 164, 589 P.2d 38 (App.1978); *Yoder v. Hooper,* 695 P.2d 1182 (Colo.Ct.App. 1984), *affirmed,* 737 P.2d 852 (Colo.1987).

The district court (Hon. D. Cogswell, presiding) determined that the Havelicks were seeking specific performance of Chobot's individual personal agreement to sell the distributorship, which was not related to the daily operations of the partnership business. Therefore, the court held that it could try the Havelicks' claim for the equitable remedy of specific performance without first conducting an accounting. On appeal, Chobot does not challenge this holding by itself, but asserts that the later denial by the district court (Hon. J. Michaud, presiding) of his motion for an accounting was wrongly based on the result of the bankruptcy proceedings.

■ We hold that the district court properly found the resolution in bankruptcy court to be conclusive. The bankruptcy court stated that the plan of reorganization would be binding upon any holder of a claim or interest, whether or not the claim or interest had been impaired, and whether or not the holder had accepted the plan. When considering the effect of the bankruptcy, the district court stated that it:

completely encompassed whatever accounting was required by statute or warranted by the facts.... Any rights or claims the parties had *as to their respective partnership interests* were either actually litigated or should have been litigated during the bankruptcy proceedings.

[Emphasis in original.] Although not identified by name in the district court's decision, the doctrine of res judicata clearly applies in this case. The doctrine states that:

in an action between the same parties upon the same claim or demand the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit.

*Magic Valley Radiology v. Kolouch,* 123 Idaho 434, 436-37, 849 P.2d 107, 109-10 (1993) *citing Joyce v. Murphy Land & Irrigation Co.,* 35 Idaho 549, 553, 208 P. 241, 242-43 (1922). *See also Crown v.*

---

1. Many jurisdictions require a prior demand for an accounting and a refusal to comply with the demand before an action for an accounting may be maintained; the prior demand and refusal must be alleged in the complaint. 1 AM.JUR.2D *Accounts and Accounting* §§ 46, 47, 57, 60 (1962). *See also* ANNOT., *Accounting—Necessity of Demand,* 143 A.L.R. 1211 (1943). Whether a prior demand and refusal are necessary in Idaho is a question our courts have yet to answer. *See Thamert v. Carter,* 72 Idaho 515, 245 P.2d 145 (1952) (merely assuming the existence of the rule for purposes of discussion). In this case, the record does not reveal whether a prior demand or refusal was made by either party. However, an accounting of several years of partnership business was performed at Chobot's request, and no irregularities were found.

*Klein Bros.*, 121 Idaho 942, 829 P.2d 532 (Ct.App.1991) (recognizing preclusive effect of a prior bankruptcy proceeding on a subsequent state court action).

In this case, Chobot placed the partnership in involuntary bankruptcy before the district court could try the accounting issue. The Havelicks and Chobot appeared as creditors of the partnership in the bankruptcy proceeding. The bankruptcy court identified the partnership assets and the debts and claims against the partnership. Chobot was able to challenge several of the claims made by the Havelicks on the ground that the claims were not valid obligations or liabilities of the partnership. A plan of reorganization was approved and the partnership assets were liquidated to satisfy partnership debts, including those claims submitted by the Havelicks and Chobot. The record indicates that by the end of 1986 Chobot knew of whatever alleged acts of mismanagement the Havelicks might have performed, and had access to partnership records. In the bankruptcy proceeding, Chobot was not only given the opportunity to challenge the debts that arose because of the Havelicks' alleged mismanagement, but he actually presented several challenges.

When the partnership's reorganization in bankruptcy was approved, the partnership was dissolved. I.C. § 53–331(5). The plan of reorganization also served as the winding up and termination of the partnership, two necessary occurrences. *See* I.C. § 53–330; *Ramseyer, supra; Arnold, supra.* Winding up is the process of settling partnership affairs after dissolution and involves terminating the business and discharging the obligations of a partnership to its members or creditors and includes liquidation of the partnership assets, paying creditors, and distributing to partners their value of their respective interests. 59A AM.JUR.2d *Partnership* § 1100 (1987). Here, an accounting and winding up were performed when identifying the partnership assets and liabilities and liquidation by sale of the assets to satisfy partnership debts. An accounting was not necessary for Chobot to determine his claims for breach of fiduciary duty or to determine

the assets and liabilities of the partnership. An accounting would have merely duplicated the inquiry performed by the bankruptcy court and would have destroyed the conclusiveness of the plan of reorganization.

### Fiduciary Duty

■ Next, Chobot argues that the district court erred when it instructed the jury that he could be found liable for breaching his fiduciary duty to the Havelicks. He does not challenge the content of the jury instruction, but asserts that the claim was premature because no accounting had been performed. His argument is without merit because the Havelicks' claim of breach of fiduciary duty and their assertion of money damages were not tried until after the bankruptcy proceeding, which the court found constituted an accounting. We have determined that the district court was correct in that view, thus we do not consider the Havelicks' claim to be premature.

### Interference with Contract

■ Finally, Chobot argues that the district court erred when it instructed the jury that he could be found liable for the tort of intentionally interfering with the contract to sell the distributorship. He claims that he cannot have tortiously interfered with a contract to which he was a party, and that the court entered into an erroneous legal fiction when it distinguished the sale of the warehouse from the sale of the distributorship.

Again, Chobot does not contend that the instruction misstates the law. Instead, he asserts that the instruction should not have been submitted to the jury because the court erroneously interpreted the record and the contract with Jones. We will not disturb factual determinations such as these absent substantial evidence.

It is undisputed that the warehouse was owned individually by the Havelicks, not as partners with Chobot. Chobot had objected to building the warehouse and refused to contribute to its construction. The Havelicks built the warehouse themselves and

leased it to the partnership. The record indicates that although the warehouse was included in the purchase agreement with Bill Jones, Chobot was not connected to that property or its sale, save for his partnership lease interest. Such an interest could not frustrate the sale. More importantly, the purchase agreement, the exhibits, and testimony at trial indicate that the partnership was not to share in the proceeds of the sale of the warehouse. During trial, evidence was introduced that Chobot contacted Bill Jones' son to suggest that if Jones did not attend a bankruptcy meeting and reaffirm his purchase offer, Jones could purchase the business from Chobot at a cheaper price because the warehouse would not be part of the deal. We conclude that the court did not err.

### Conclusion

A demand for an accounting was effectively made by the Havelicks' complaint and equity did not require Chobot to counterclaim for an accounting. The inquiry engaged in by the bankruptcy court in approving a plan of reorganization negated the need for an accounting. The bankruptcy court determined the partners' claims against the partnership and the partnership's assets and liabilities. After placing the partnership in bankruptcy, Chobot had the opportunity to present his claims against the partnership which would have been determined in an accounting. A subsequent accounting would have only duplicated the determination of the bankruptcy court. The court properly submitted to the jury the issues of whether Chobot breached his fiduciary duty to the Havelicks and whether he intentionally interfered with the contract to sell the distributorship, and the Havelicks' warehouse, to Jones. Based on the foregoing, we affirm.

Costs to respondents, Havelicks; no attorney fees awarded on appeal.

SWANSTROM, J., and SILAK, J., Acting Judge, concur.