71 P.3d 1028

Charles W. COX, Plaintiff–Appellant,

v.

Catharine COX, Defendant–Respondent.

No. 28329.

Supreme Court of Idaho,
Boise, March 2003 Term.

June 3, 2003.

Finney & Finney, Sandpoint, for appellant. Gary A. Finney argued.

Elsaesser Jarzabek Anderson Marks Elliot & McHugh, Chtd., Sandpoint, for respondent. Cynthia A. Elliott argued.

KIDWELL, Justice.

Charles W. Cox (Charles) sued his sister Catharine Cox (Cathy): (1) for an accounting of funds he and Cathy inherited from their mother; (2) for a lien on a home Cathy purchased with those funds; and (3) to quiet title in a home in which Charles quitclaimed a one-half interest to Cathy. Charles appeals the district court's findings in favor of Cathy. The judgment of the district court is affirmed.

## I.

### FACTS AND PROCEDURE

Charles and Cathy are the only children of Grace R. Swartzbaugh (Grace). Grace lived with Charles in California from approximately 1985 until her death on June 8, 1992. At the time of Grace's death, Cathy and her husband lived in Alaska. Grace executed a will prior to her death. With the exception of $1,000 given to Cathy's daughter, Grace's will left her entire estate to Charles and Cathy in equal shares. The will named Charles as executor. Charles never probated the will.

Aside from some personal property, the record shows the bulk of Grace's estate consisted of a checking and savings account. Grace's accounts were held jointly with Charles. On June 8, 1992, the accounts totaled $34,814.00. After Grace's death, the accounts continued to accrue interest. In early August 1992, Cathy traveled to California and she and Charles sold Grace's personal items that neither wanted. At that time, Charles and Cathy mutually agreed to distribute $1,000 from Grace's estate to each of their children. Charles alleges he also advised Cathy that they needed to find a better way to invest the money in Grace's accounts and it was in their best interest to keep the money in one lump sum in order to get a better return. Cathy alleges she advised Charles to settle Grace's affairs and send her her share of Grace's estate. On August 31, 1992, Grace's accounts collectively held $35,173.00. Charles removed Grace from the accounts and added Cathy.

In December 1992, Charles withdrew $33,308 from the accounts and sent a cashier's check to Thomas Beauvais (Beauvais), an investment broker and friend of Cathy's in Alaska, with instructions to invest the $33,308. Cathy assumed this money represented her share of Grace's estate. There was no indication given to Beauvais by Charles that he had any interest in the $33,308. Beauvais invested the $33,308 in an annuity (Alaska account), which named Cathy as the sole annuitant and Charles as the beneficiary upon death. The remaining money paid for Grace's funeral expenses and $1,000 was distributed to Charles' son.

In 1996, Cathy divorced and moved from Alaska to California to live with Charles. In the spring of 1997, Charles and Cathy began to look for property in Sandpoint, Idaho. On May 27, 1997, Charles and Cathy entered into a sale agreement to buy a home at 4705 Upper Pack River Road (Pack River house), Sandpoint. On July 18, 1997, Cathy was removed as a party to the sale agreement because she did not qualify for financing. On the same day, Charles drafted a quitclaim deed, granting a one-half interest in the Pack River house to Cathy. Cathy alleges she was not made aware of the quitclaim deed until April 1998. Charles maintains they both intended to own the Pack River house jointly, even though Cathy's name was removed from the closing documents, and Cathy would pay Charles for one-half of all the expenses associated with purchasing the house. Cathy claims she did make a gift of $10,000 to Charles to help with the down payment. Charles denies this. Charles gave Cathy a letter acknowledging a $10,000 gift, but Charles maintains the $10,000 came from his own account and the letter was to establish Cathy gave value for the quitclaim deed. Cathy made no other payments to Charles toward expenses for the Pack River house.

Charles closed on the Pack River house. On July 29, 1997, Charles and Cathy moved to the Pack River house. On August 19, 1997, Cathy's quitclaim deed was recorded. The quitclaim deed was not recorded until after the closing in order to prevent the lender from learning of it. During the spring of 1998, Charles and Cathy began experiencing differences with one another. On June 16, 1998, Cathy transferred the

funds from the Alaska account to an account with First Security Bank Investor Service (First Security account) in Sandpoint. Charles was present when the transfer occurred, but made no mention of his alleged one-half interest in the money. The original $33,308.00 had grown to $43,099.00. At some point, the bickering between the siblings escalated and Charles advised Cathy he was going to sell the Pack River house and she needed to find other living arrangements. Shortly thereafter, Cathy closed the First Security account, paying $2,585.00 on the taxable gain. Cathy moved from the Pack River house and used the remaining money from the First Security account to purchase a home at 1041 Cedar Street (Cedar Street house) in Sandpoint.

On November 23, 1998, Charles sued Cathy seeking an accounting of the funds from the First Security account, a lien on the Cedar Street house to the extent his share of the funds from the First Security account were used to purchase it, to quiet title in the Pack River house, and for damages resulting from personal property Cathy allegedly took when she moved. On February 23, 1999, Cathy answered and counterclaimed for a partition of the Pack River house, for a partition of personal property, and for a constructive trust for the value of one half of Grace's estate.

On June 25 and 26, 2001, the district court conducted a bench trial. Charles and Cathy resolved their claims for personal property by stipulation during trial. On November 30, 2001, the district court entered findings of fact and conclusions of law in favor of Cathy. On January 31, 2002, the district court entered judgment dismissing Charles' claims for an accounting of funds, a lien on the Cedar Street house, and to quiet title in the Pack River house. The judgment also quashed a lis pendens recorded by Charles and granted Cathy's claim for partition of the Pack River house. The district court awarded Cathy costs and attorney fees. Charles timely filed this appeal.

## II.

## STANDARD OF REVIEW

When a lower court decides against a plaintiff based on lack or weight of evidence, the lower court finds the plaintiff failed to meet its burden of proof. *Bouten Constr. Co. v. M & L Land Co.,* 125 Idaho 957, 965, 877 P.2d 928, 936 (Ct.App.1994) (quoting *County of Canyon v. Wilkerson,* 123 Idaho 377, 381–82, 848 P.2d 435, 439–40 (Ct. App.1993)). On appeal, this Court reviews the lower court's decision to determine if it was "clearly erroneous." *Id.* A lower court's factual findings will not be deemed clearly erroneous unless this Court, after reviewing the record, is certain the lower court erred. *Id.* There is no clear error if the lower court's findings are supported by substantial, competent evidence. *Id.* This Court defers to the lower court's unique opportunity to determine the credibility of witnesses. *Id.* Evidence is substantial and competent if a reasonable trier of fact would accept it and rely on it. *McCray v. Rosenkrance,* 135 Idaho 509, 513, 20 P.3d 693, 697 (2001); *Williamson v. City of McCall,* 135 Idaho 452, 454, 19 P.3d 766, 768 (2001). Findings based on substantial, competent evidence, even if conflicting, will not be disturbed on appeal. *Bolger v. Lance,* 137 Idaho 792, 794, 53 P.3d 1211, 1213 (2002).

The district judge's decision to grant or deny a motion to amend a complaint is discretionary. *Trimble v. Engelking,* 134 Idaho 195, 196, 998 P.2d 502, 503 (2000). Absent an abuse of discretion, the Court will not reverse the district judge's ruling. *Id.*

This Court exercises free review over Conclusions of law. *Id.*

## III.

## ANALYSIS

**A. The District Court Did Not Err In Deciding Charles Is Not Entitled To An Accounting Of The Funds Cathy Used To Purchase The Cedar Street House.**

**1. Charles failed to prove he is entitled to one-half of the funds from the First Security account.**

Charles seeks an accounting of the funds invested in the annuity account on Cathy's behalf. An accounting is an equita-

ble remedy. *See Farmer v. Loofbourrow,* 75 Idaho 88, 92, 267 P.2d 113, 115 (1954); *Havelick v. Chobot,* 123 Idaho 714, 718, 851 P.2d 1010, 1014 (Ct.App.1993). The goal of an accounting is to ascertain a party's interest in property and to determine the value of the party's interest. *See Havelick v. Chobot* at 718, 851 P.2d at 1014. When two parties are unable to settle their joint financial affairs, an accounting is an appropriate remedy. *Id.*

The district court concluded that Cathy possessed the funds from the First Security account and that possession of personal property was prima facie evidence of her ownership. Based on the evidence provided at trial, the district court found, "Charles has not met his burden of rebutting the presumption that Cathy was the sole owner of the personal property, the funds which were later invested in her home."

Until Charles sent the $33,308 to Beauvais, Cathy testified she was unaware of how much money Charles would send her. Cathy testified that it was her understanding Charles would send her one-half of Grace's estate. The testimony and evidence at trial reveals Charles, a person the record shows to be competent in financial matters, neither mentioned his alleged one-half interest in the $33,308 he sent to Cathy, nor took any steps to protect his alleged one-half interest, until he filed this lawsuit. The cashier's check Charles sent to Cathy was sent in Cathy's name only and did not require an endorsement from Charles. Charles failed to protest when Cathy purchased the annuity as the sole annuitant. As owner of the annuity, Cathy alone was entitled to payments upon its maturity. Charles testified he established his one-half interest in the funds by paying the yearly taxes based on IRS 1099 forms. Charles also testified he received all of the 1099 INT interest reporting forms, even though Cathy was the annuitant on the account. Charles failed to produce any 1099 forms at trial, claiming Cathy destroyed all his records despite the fact he kept them in a locked cabinet in the basement of the Pack River house. Furthermore, when Cathy made an early withdrawal from the First Security account, she alone paid taxes on the gain.

Based on its findings of fact, the district court determined when Charles transferred the $33,308 to Cathy, he intended her to have all the rights of ownership. The district court then concluded Charles failed to meet his burden of proof that one-half the money from the First Security account was his. As a result, the district court found Charles was not entitled to an accounting because he had no ownership interest in the First Security account.

The district court's finding, that Charles intended for Cathy to have all rights of ownership to the $33,308, is based on substantial, competent evidence. As a consequence, the district court did not err by dismissing Charles' claim for an accounting.

**2. The district court did not err by not placing a lien on the Cedar Street house.**

The district court correctly determined Charles had no interest in the $33,308. The lien Charles sought was to protect his alleged interest in the $33,308. Since Charles had no interest in the $33,308 to protect through a lien, the district court correctly denied his request for a lien on the Cedar Street house.

**3. We need not address the district court's alternative finding based on laches.**

In her closing argument and post trial brief, Cathy asserted the affirmative defense of laches. The district court determined the parties impliedly consented to try the issue of laches and amended the pleadings accordingly. As an alternative ground on which to find for Cathy, the district court concluded laches barred Charles' claim for an accounting. However, because we affirm the district court's decision that Charles is not entitled to an accounting or lien, we need not address the affirmative defense of laches.

**B. The District Court Did Not Err By Not Granting Charles' Claim To Quiet Title To The Pack River House In His Favor.**

**1. The quitclaim deed from Charles to Cathy does not fail for lack of consideration.**

As a general rule, it is not required that a conveyance of property be sup-

ported by consideration to make the conveyance valid. *See Hawe v. Hawe,* 89 Idaho 367, 376, 406 P.2d 106, 110, 111 (1965) (quoting 89 C.J.S. *Trusts* § 98 at 940). A grantor may convey title to property for the benefit of the grantee for no consideration. *Id.*

On August 19, 1997, a quitclaim deed conveying a one-half interest from Charles to Cathy in the Pack River house was recorded. The deed states: "Charles W. Cox, an unmarried man, does hereby CONVEY, RELEASE, REMISE and forever QUITCLAIM unto CATHARINE H. COX, an unmarried woman and sister of the herein Grantor, as to an undivided one-half interest ... in the following described real property." The deed gives a legal description of the property where the Pack River house sits. Since consideration is not required to validly convey an interest in property, the quitclaim effectively conveyed a one-half interest in the Pack River house to Cathy. As a result, the district court did not err by not granting Charles' claim to quiet title to the Pack River house in his favor.

### 2. The district court properly applied the partition remedy.

A co-tenant may bring an action to partition real property. Idaho Code § 6–501 (2002). The district court may order a sale of the property if a partition cannot be made without great prejudice. I.C. § 6–512.

The district court determined partitioning the Pack River house would result in great prejudice because the property includes one house and one barn, preventing an equal division of the property. The district court also stated zoning laws very likely prohibited division of the property. As a result, the district court ordered the Pack River house to be sold by listing with a licensed real estate broker. Charles argues, relying on I.C. §§ 6–524 and 6–525, the Pack River house should be sold at auction and he should be allowed to credit his contributions to acquiring the Pack River house to purchase of the house at auction. However, I.C. §§ 6–524 and 6–525 are inapplicable to this case because they pertain to situations where the district court appoints referees to assist in the actual partition of property, which the

district court has not done in this case. I.C. § 6–512. Therefore, the district court's judgment requiring listing of the Pack River house with a broker until sold is affirmed.

### 3. The district court did not err in determining Cathy was ousted and entitled to rent.

Tenants in common are entitled to use and possess common property subject to the condition that they may not exclude other co-tenants from use and possession of the common property. *Watts v. Krebs,* 131 Idaho 616, 623, 962 P.2d 387, 394 (1998). Though a settled issue in many states, no Idaho court has decided the issue of whether an ousted co-tenant is entitled to a proportion of the fair rental value of common property. The majority rule is that when one co-tenant excludes another co-tenant from use and possession of common property, the excluding co-tenant is liable for the value of their exclusive use of the property, including rent. *Sack v. Tomlin,* 110 Nev. 204, 871 P.2d 298, 306 (1994); *Palmer v. Protrka,* 257 Or. 23, 476 P.2d 185, 190 (1970) (when difficulties in personal relationships between cotenants make co-occupancy impossible, the excluded co-tenant is entitled to the rental value of their interest in the property); *Ireland v. Flanagan,* 51 Or.App. 837, 627 P.2d 496, 500 (1981); *Maxfield v. Maxfield,* 47 Wash.App. 699, 737 P.2d 671, 676 (1987); *Cummings v. Anderson,* 94 Wash.2d 135, 614 P.2d 1283, 1289 (1980) (where property is not adaptable to double occupancy, the mere occupation by one co-tenant may operate to exclude the other). This Court adopts this position.

Based on Cathy's testimony at trial, the district court determined Charles ousted her from the Pack River house. Cathy testified that she was trying to work out her differences with Charles, but he responded by stating that he was putting the house up for sale and told her she "had better find a place to live." Cathy responded by saying, "Okay." That was the last thing she said to Charles before moving out and acquiring the Cedar Street house. Cathy's testimony indicates she felt she was not welcome to occupy the Pack River house. Based on Cathy's testimony, the district court's finding that

Charles ousted Cathy is supported by substantial, competent evidence. As a result, the district court correctly concluded Cathy is entitled to one-half the fair rental value of the Pack River house from the time she was ousted until the Pack River house is sold.

### C. Cathy Is Not Entitled To An Award Of Attorney Fees Under I.A.R. 41 and I.C. § 12–121.

 Cathy claims Charles' appeal was brought frivolously, unreasonably, and without foundation and, as a result, she is entitled to an award of attorney fees on appeal.

Attorney fees are appropriate when an appeal is frivolous, unreasonable, or without foundation. I.C. § 12–121; *Carnell v. Barker Mgmt., Inc.*, 137 Idaho 322, 330, 48 P.3d 651, 659 (2002). Among other reasons, an appeal is frivolous when the underlying law upon which it relies is well settled and the appellant makes no substantial showing the district court misapplied the law. *King v. Lang*, 136 Idaho 905, 912, 42 P.3d 698, 705 (2002).

No Idaho court has decided whether ouster gives rise to liability to a co-tenant for rent. Charles testified that he did not exclude Cathy from the Pack River house, only that he was going to sell it. Charles' belief that he did not oust Cathy is not necessarily imprudent and there is no Idaho case law from which Charles could seek guidance on the issue. Therefore, this appeal was not frivolous, unreasonable, and without merit. This Court denies Cathy's claim for attorney fees under I.C. § 12–121 because at least one of the issues raised on appeal is not well-settled law in Idaho.

### IV.

### CONCLUSION

The district court did not err when it dismissed Charles' claim for an equitable accounting. As a result, Charles was not entitled to an equitable lien on the Cedar Street house. The district court decision to deny Charles' claim to quiet title to the Pack River house in his favor is affirmed because the quitclaim deed effectively conveyed a one-half interest in the Pack River house to Cathy. The district court correctly ordered the sale of the Pack River house because it could not be partitioned without great prejudice. The manner of sale ordered by the district court is in accord with Idaho law. Additionally, Charles ousted Cathy, a tenant in common, from the Pack River house, entitling her to one-half of the fair rental value of the Pack River house from the time she was ousted until time of sale. No attorney fees will be awarded on appeal. Costs to the respondent.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS, and EISMANN concur.