**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 50735**

| | |
|---|---|
| G. NICKOLAS DUNCAN,<br><br>    **Plaintiff-Appellant,**<br><br>v.<br><br>**JORRIE FACKRELL,**<br><br>    **Defendant-Respondent.** | **Filed:  April 19, 2024**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Cynthia Yee-Wallace, District Judge.

Judgment denying petition for partition by sale, <u>affirmed</u>.

Bevis, Thiry, Henson & Katz, P.A.; Ryan P. Henson, Boise, for appellant.

Lerma Grover Law; John J. Lerma, Boise, for respondent.

_____

GRATTON, Chief Judge

G. Nickolas Duncan appeals from the district court's judgment denying his petition for partition by sale.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

Duncan and Jorrie Fackrell were in a romantic relationship but never married.  In December 2015, a home was purchased with both Duncan and Fackrell listed on the loan and the deed (the Cherry property).  Fackrell used inheritance money for the down payment and closing costs.  Fackrell made all mortgage payments.  In addition, Fackrell paid for all maintenance of the home and paid the homeowner association dues.  At the time of trial, Fackrell's contribution towards the property was $86,238.52.

Fackrell moved into the home immediately upon purchase.  Duncan moved into the home and cohabitated with Fackrell from February 2016 until April 9, 2016, when Duncan was removed from the home for a domestic battery charge.  As a result of the domestic battery charge, the

1

criminal court issued a no-contact order prohibiting Duncan from returning to the property until July 14, 2017. Duncan testified that he made some payments toward the home, but provided no documentation. Fackrell requested payment on the mortgage from Duncan twice during May 2016, but he refused, instead going on a trip and getting a tattoo.

Duncan filed a petition for partition by sale for the Cherry property and a bench trial was held. The district court found that Fackrell rebutted the presumption of Duncan's ownership interest in the Cherry property and denied the petition for partition by sale. Duncan appeals.

## II.

## STANDARD OF REVIEW

A partition action is an action in equity and the trial court's order is reviewed for an abuse of discretion. *Nordgaarden v. Kiebert*, 171 Idaho 883, 889, 527 P.3d 486, 492 (2023). To determine if a trial court abused its discretion, this Court must analyze whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason. *Id*. However, we continue to employ the clearly erroneous standard when reviewing the district court's factual findings underlying its partition order. *Id*.

## III.

## ANALYSIS

Relying on his interpretation of *Demoney-Hendrickson v. Larsen*, 171 Idaho 917, 527 P.3d 520 (2023), Duncan argues that the district court erred by looking principally to the relative contribution by the parties instead of the totality of the circumstances in determining the parties' respective interests in the Cherry property. He further argues that the intent of the parties must be ascertained at the time of purchase, not by the parties' actions thereafter. Fackrell argues that, even if *Demoney-Hendrickson* applies, the district court did not err in its analysis when it applied the principles set forth in *Wilson v. Mocabee*, 167 Idaho 59, 467 P.3d 423 (2020). Fackrell requests attorney fees.

### A. Partition by Sale

"An action for partition asks the court to divide property owned by multiple co-tenants based on each individual owner's interests in the property." *Wilson*, 167 Idaho at 67, 467 P.3d at 431. Partition in kind is favored over partition by sale. *See generally* Idaho Code § 6-501.

2

However, a trial court "may order a sale of the property if a partition cannot be made without great prejudice." *Cox v. Cox*, 138 Idaho 881, 886, 71 P.3d 1028, 1033 (2003). The burden of proving that a partition by sale would better promote the owners' interests is upon the party requesting a partition by sale. *Nordgaarden*, 171 Idaho at 889, 527 P.3d at 492.

In a partition action, the district court must engage in a three-step process. The first step requires the district court to determine whether the parties to the action possess some interest in the property at issue. *See* I.C. § 6-501. The second step requires the district court to determine the parties' respective ownership interests in the subject property. I.C. §§ 6-501, 6-508; *Nordgaarden*, 171 Idaho at 889, 527 P.3d at 492. The third step is to determine the most appropriate method of partition: a partition in kind or a partition by sale. *See* I.C. §§ 6-501, 6-508; *Demoney-Hendrickson*, 171 Idaho at 932-33, 527 P.3d at 525-26.

"Every interest in real estate granted or devised to two (2) or more persons . . . constitutes a tenancy in common, unless expressly declared in the grant or devise to be otherwise." I.C. § 55-508. The Idaho Supreme Court has adopted the presumption, under Idaho's partition statute, that "where two or more persons take as tenants in common under an instrument silent as to their respective shares, there is a presumption that their shares are equal. This presumption may be rebutted by evidence that purchase contributions are unequal." *Wilson*, 167 Idaho at 65, 467 P.3d at 429.

Under I.C. § 6-501, the action for sale of a property is based on the respective rights of the persons interested therein. In determining the interest of the various parties to the property, Idaho courts have considered the amount of financial contribution by the parties who own the property as co-tenants, including proof of improvements to the property (i.e. receipts showing improvements, who paid taxes, who cared for the property, etc.). *See Cox*, 138 Idaho at 885, 71 P.3d at 1032 (one party had proof of paying taxes where another party had no proof of taxes paid).

Duncan contends the district court erred by relying on *Wilson* and looking principally to the financial contributions of the parties. Duncan argues that the district court should have applied a totality of circumstances analysis as set forth in *Demoney-Hendrickson*. In *Wilson*, the district court found that Wilson had a one hundred percent ownership interest in the home because she contributed one hundred percent of the purchase price. While Mocabee's name was on the deed, the evidence did not establish that Wilson intended to gift Mocabee any ownership interest. *Wilson*, 167 Idaho at 68, 467 P.3d at 432. The Idaho Supreme Court quoted I.C. § 6-501 for the

3

proposition that the presumption of equal ownership may be rebutted by evidence that purchase contributions are unequal. The Idaho Supreme Court upheld the district court's analysis, finding under the doctrine of invited error that Mocabee "invited the district court to use the partition statute, Idaho Code § 6-501, in analyzing the issues presented in th[e] case." *Wilson*, 167 Idaho at 65, 467 P.3d at 429.

In *Demoney-Hendrickson*, both parties moved for summary judgment in the partition action. The district court granted the estate's motion and ordered the partition of the property by sale. *Demoney-Hendrickson*, 171 Idaho at 920, 527 P.3d at 523. The district court held that each party had an undivided one-half interest in the property based on the deed. *Id*. The Idaho Supreme Court noted that "this Court has not yet addressed how a trial court should determine the respective ownership rights of the parties to a partition action." *Id*. at 923, 527 P.3d at 526. Ultimately, the Court held the "presumption should be a rebuttable one and h[e]ld that the presumption of equal shares may be rebutted with evidence that the parties intended to create unequal shares." *Id*. at 924, 527 P.3d at 527. The Court, however, saw "no reason to limit the types of evidence that may be considered in this analysis." *Id.* Rather, the trial courts should examine the totality of the circumstances and are free to consider extrinsic evidence in conducting this analysis. *Id*. at 925, 527 P.3d at 528.

Duncan argues that the district court erred because it applied a contributions test, not a totality of the circumstances test. Duncan provides no authority for the proposition that a test announced after the trial in this matter applies, or how it could result in error by the district court. Duncan also suggests that the *Demoney-Hendrickson* Court disavowed the analysis in *Wilson*. The Court in *Demoney-Hendrickson* did state that *Wilson* was not controlling given the unique set of facts in that case. *Demoney-Hendrickson*, 171 Idaho at 924, 527 P.3d at 527. However, the unique facts involved the stipulation for which the invited error doctrine applied, not the reasoning in *Wilson*. The *Demoney-Hendrickson* Court immediately went on to approvingly discuss the presumption principles set out in *Wilson*. *Demoney-Hendrickson*, 171 Idaho at 924, 527 P.3d at 527.

Nonetheless, Duncan views too narrowly the district court's analysis. The district court conducted a totality of circumstance-type analysis to determine the interest Duncan had in the Cherry property. The district court denied the petition based on the contributions made by both parties as well as recognizing evidence of intent.

4

Prior to the closing on the property, the parties discussed the disposition of the property should their relationship fail. The evidence, which largely came from a text message exchange reads:

Fackrell: Meeting at the bank tomorrow morning?
Duncan: Yup
Fackrell: Do you think we should discuss the possibility of what happens should we not work out again? Like what happens with the house and stuff. Like a housing prenup. Well, I would like to discuss it further :)
Duncan: Hmm. Wanton be positive. Must've been mom? Way to*
Fackrell: I am positive. It's a practical question.
Duncan: Yeah but poor timing And still sounds like mom.
Fackrell: I've Been wanting to talk to you about it from the beginning.
Duncan: So why now?
Fackrell: Because everything happened so fast and I feel it's necessary to address now.
Duncan: Well it's your down payment but I'm paying the mortgage so you should buy me out and keep the house for you and [the children].
Fackrell: Aren't we both paying the mortgage?
Duncan: If we divide it up half on all then yes but I don't think you can afford that. Half of everything, internet [ ] Et. Al. Unless you'd prefer I buy you out? But you won't be able to get another house like I would be able to so I don't think that is a good idea. The other option takes care of everyone the best methinks. What do you think?
Fackrell: What does buy you out mean though?
Duncan: You have to refinance and give me back what I put in. That's what happens in divorces.
Fackrell: I see.
Duncan: What are your thoughts you still haven't said.
Fackrell: I was thinking the same, but also addressed it as in what would happen should either person get the house. I would like to think it will never come to this because I love you forever
Duncan: Well I think you should have it but I don't plan on that. But if you do I shouldn't be screwed over it either.
Fackrell: I wouldn't think so either.
Duncan: I think my plan takes care of everyone best
Fackrell: However, we shall discuss the best payment of the bills shall be.

Duncan argues that the district court erred by determining the parties' intent solely from the contributions made after the purchase instead of the evidence of intent before the purchase. Yet, the only evidence Duncan argues in support of this claim are the text messages quoted above. The district court quoted the text messages and noted that, while the messages between the parties prior to the purchase of the Cherry property suggest that Duncan was planning to pay the mortgage

in full, the messages also suggest that Fackrell intended to pay half of the mortgage. Duncan stated to Fackrell "You have to refinance and give me back what I put in." While Duncan's intent may have been to pay the mortgage, he did not do so. Moreover, Duncan's expressed intent was to be paid back what he put into the property. The Court in *Demoney-Hendrickson* stated, "Unless a deed expressly identifies those respective interests on its face, it only indicates that *an* interest has been granted, but not what percentage of interest has been granted." *Demoney-Hendrickson*, 171 Idaho at 923, 527 P.3d at 526. Duncan's unfulfilled intent to pay the mortgage and bills does not establish his ownership interest for partition.

Fackrell provided overwhelming evidence and testimony that she contributed the majority, if not all, of the funds to the purchase, maintenance, and improvements of the Cherry property. Conversely, Duncan testified that he made three cash payments to Fackrell toward the mortgage during the approximately two months he resided at the Cherry property. However, he did not testify as to the amount and provided no documentation in support of his testimony. Duncan has cited to no evidence which would establish a percentage ownership interest or how application of a totality of the circumstances test would support his partition claim.

The district court properly analyzed the evidence and found that there was clear and convincing evidence that Fackrell contributed all funds towards the Cherry property. The district court appropriately found that Duncan did not have an interest other than his name on the deed and loan. The presumption of interest was rebutted by evidence outside of the deed and in line with the holdings from *Demoney-Hendrickson* and *Wilson*. Duncan has failed to demonstrate error by the district court.

**B. Attorney Fees**

Fackrell requests attorney fees on the basis that Duncan's appeal is frivolous, unreasonable, and without foundation. Furthermore, Fackrell contends Duncan's appeal ignores and mischaracterizes both the trial court's findings and also existing case law and precedent in an attempt to retry an already settled claim. Fackrell's request for attorney fees is pursuant to I.C. § 12-121 and Idaho Appellate Rule 41. Attorney fees may be awarded to the prevailing party if "the Court determines that the action was brought or pursued frivolously, unreasonably or without foundation." *Baker v. Sullivan*, 132 Idaho 746, 751, 979 P.2d 619, 624 (1999).

Duncan argues that attorney fees are not appropriate because of the intervening law set forth in *Demoney-Hendrickson*. However, Duncan failed to show any evidence that would

6

establish his ownership interest. As set out in *Demoney-Hendrickson*, having one's name on a deed creates a presumption of an interest, not the extent of the interest. There simply is nothing more to establish Duncan's interest than the rebuttable presumption, which was amply rebutted in this case. Therefore, we hold Fackrell is awarded attorney fees pursuant to I.C. § 12-121 and costs pursuant to I.A.R. 41.

## IV.
## CONCLUSION

For the reasons set forth above, we affirm the district court's denial of the petition for partition by sale of the Cherry property. Fackrell is entitled to attorney fees and costs on appeal.

Judge HUSKEY and Judge LORELLO **CONCUR**.